We'll hear argument first this morning in Case 12-71, Arizona v. the Inter Tribal Council of Arizona. General Horn. Thank you, Mr. Chief Justice, and may it please the Court. The NVRA should not be construed to preempt Arizona's Proposition 200 for three reasons. First, prohibiting a State from effectively enforcing the citizenship requirement is so far-reaching that if Congress had intended that, it would have put the prohibition in the statute expressly, which it did not do. Congressional silence should not disable States from taking sensible precautions to exclude noncitizens from voting. Second, when Congress wanted to expressly prohibit something, it knew how to do it. It expressly prohibited notarization and other forms of authentication. This Court has frequently held that statutory language that indicates that prohibits one thing indicates there is no other implicit prohibition, the expressio unis rule. Third, Proposition 200 is consistent with the purposes and objectives of the NVRA, because the purpose of the NVRA. Sotomayor, if I see the purpose of the NVRA to simplify registration. How is Arizona's provisions consistent with that objective and purpose? Given that some of the amici explain that many people don't have the documents that Arizona requires. Yes, Your Honor. First of all, simplifying the procedure is one of two important purposes of the NVRA. The other is the integrity of the system. Well, why does one take precedence over another? I would say, Your Honor, that neither takes precedence over the other. They are both equally important. And so. So if something you do conflicts with one of those purposes, why isn't it preempted by the Federal law? Your Honor, I think the question is, if you take the two purposes together, does the Proposition 200 strongly fulfill one and have a minimal burden on the other? And, Your Honor, I would rely on the findings of the district court in this case. In fact, this Court instructed the Ninth Circuit to defer to the factual findings of the district court in the Purcell case, which was this case in an earlier stage. Why would you think that Congress, in doing the short-form registration, didn't consider the issue of fraud and decide that it had arrived at the balance it wanted? Because, Your Honor, the Congress did not specify what the States could or could not do. Ginsburg. But it did, but Congress did specify how citizenship was to be handled, and it was to be an attestation, assigned attestation, subject to the penalty of perjury. So it's not as though the Federal form didn't relate to citizenship. It did, and it said this is the way we deal with citizenship. Then Arizona adds something else. So I would like, General Horne, for you to respond to a question that's already been raised by the panel that decided this case originally, which was the statute said, says each State must accept and use the Federal form, period. That's the end of it. And then it says, in addition to that, the State can do other things. The judge who asked that question thought it was perfectly clear. You use the Federal form, and if you want to do something in addition, but you must use and accept the Federal form and not add something to it. Horne, I think it's very clear that this statute does not say the signature is the only thing that the States can use to verify the eligibility of the applicant. Now, in using the term accept and use, Your Honor, accept and use in ordinary language, we've given lots of examples in our briefs, one can accept and use a form for a particular purpose without that form being sufficient to accomplish that purpose. I came here from Arizona on an airplane. If the airline said we accept and use an e-mail ticket, you don't need to bring a paper ticket, and then I got there and they said we want to see identification to prove that you are who you say you are, that would not contradict the statement that they are accepting and using the e-ticket. They are accepting and using the e-ticket for a specific purpose. Kagan But, General Horne, wouldn't it contradict it if instead of saying, well, we'd like you to offer identification, saying, well, we'd like you also to have a paper ticket? Horne Yes, Your Honor. If they say that. Kagan That would be inconsistent with the accept and use language. Isn't that right? Horne That's correct, Your Honor. And if I take that analogy to our facts, if we had changed the Federal form, I think we would have been in violation, but we did not change the Federal form. We used the Federal form exactly as it's printed by the Federal government. And we also added something to the Federal form, and that essentially creates a new set of requirements and a new form. Horne Your Honor, we accept and use the Federal form. We ask, in addition to that, for evidence that the person is a citizen, that they are eligible to vote. The form is not exclusive. The form does not bind us to use only the form and nothing else. Kagan Do you think that you could have said, you know, we have our own State form, which we are allowed to have under the statute. Anybody who requires the Federal form has to append the State form as well. Could you have done that? I think not, Your Honor, because I think that would have been contrary to the purposes and objectives of the Act. I think what we did is consistent with the purposes and objectives of the Act. But if you're Well, how do we draw the line? Where does the line get drawn between adding just your own form and adding a new set of requirements, which, you know, you could just as easily have called a form? Because the statute contemplates that it is the burden of the States to determine the eligibility of the voters. The EAC was given the duty to develop the form. And we don't argue with the fact that the form belongs to the EAC. But So that form should have included the eligibility requirements that your State demands. And it seems to me your complaint is that the Federal form does not require proof of citizenship, unless you consider just the statement that I'm a citizen to be proof of citizenship. But why didn't you challenge the form? I mean, that's my problem with this. I frankly think that Federal form doesn't make much sense unless it's to be exclusive for Federal voting. And why didn't you challenge the refusal of the commission to include on the form as additional State requirements the proof of citizenship? Your Honor, under section 6A1 of the statute, the burden of determining whether the citizen is eligible rests with the State. That's our burden. Sure. The form belongs to the EAC. The determination of whether the applicant is eligible belongs to us. So whether or not they put what we are asking for on the form doesn't matter. We are fulfilling our duty under section 6A1 by determining the eligibility of the applicant by asking for additional evidence of citizenship. Well, you are simply denying, then, that the Federal government can, so long as it protects the requirements that your State imposes, you are saying the Federal government cannot prescribe a single form for voter registration. Your Honor, the Federal government can prescribe the form, but the form is not exclusive. The responsibility to determine the eligibility of the applicant is not exclusive. Why can't it make it exclusive? Let's assume, I think, I think that accept and employ, whatever the language is, suppose I think that that does mean it's supposed to be exclusive. What harm is there so long as the Federal commission requires, as part of the Federal form, all of the necessary proofs of qualification that the State imposes? Well, Your Honor, the form is cannot be exclusive. I mean, even the ITCA Respondent and the United States Respondent admit that we can look to external evidence to determine whether the voter is eligible. The argument is they say we can look to external evidence, but we can't ask the applicant himself, who has the most information, to pull out his driver's license and write down a number. There is no question. Ginsburg, there are a whole list of State-specific requirements that get appended to the form. And I think Justice Scalia was raising the question, did you ask to have Arizona's requirement, just as the other State-specific requirements, did you ask the Federal commission to include, as a State-specific requirement, this proof of citizenship? We did, Your Honor, and the commission itself took no action. The executive director rejected our request. The executive director has no power to make determinations. Congress has explicitly stated that the EAC can act only by a vote of 3 out of 4 of its members. You did nothing more about that. You didn't go to court to say you have to include this as one of the State-specific requirements? Why didn't you do that? Your Honor, that was under a predecessor of mine, so I don't know the reason. But the reason is that the form is one thing that we accept and use to determine the eligibility of the voter, but it's not the only thing that we accept and use. It's not the only thing. My friends on the other side. Sotomayor, I have a hugely great difficulty, which is the NVRA says that people can mail in this form. Yes. I don't know how your rejection of the mail-in, how you're accepting and using it when you're refusing to register someone when they do exactly what the Federal law permits them to do, mail it in. There's — I don't — I have a real big disconnect with how you can be saying you're accepting and using when you're not registering people, when they use it the way the Federal law permits them to. Yes, Your Honor. That is the position that the executive directors took, that if the form is fully filled out and on its face it shows the person is qualified, we must accept the application. We then pointed out in our brief that that would mean that even if we had documentary proof that the person was not a citizen, we'd still have to accept the application. In response to that, the Respondent, ITCA, and the Federal government said, no, you can look at external evidence if you — if it shows that the person is not a citizen. So the only question remaining then, is there any basis in the statute for drawing a distinction between our looking to external evidence that we have and our asking  Could you also ask for an address, for proof of the address, or proof of date of birth? If that were consistent with the purposes and objectives of the Act, we could, Your Honor. And in determining that, one would have to weigh our interest in the integrity of the system versus what burdens that places on the applicant. But then again, it seems to me the Federal form, as some of my colleagues have indicated, is not worth very much. Your Honor, the Federal form sets forth certain minimum requirements that have to be met. In fact, the Act says specifically in section 7b-2 that they must ask for the signature under oath of the applicant. The Federal form also provides under 7a-1 that additional things that are necessary to determine the eligibility of the applicant can also be put on the form. The EAC chose not to put anything additional on the form, which was their right. It was permissive. But they did set up a system of State-specific requirements. I think that reflects the fact that the States have the burden of determining whether or not the eligible, the applicant is eligible. That's our burden. We must accept and use the Federal form as a tool in doing that, but it is not the exclusive tool. And my friends on the other side have admitted that it is not the exclusive tool, because they have admitted that if we have documentary evidence the person is not a citizen, we can reject the application. Scalia. How could you establish citizenship without having something mailed in, in addition to the form? What are the other State-specific requirements? You have to put down your driver's license number or some other numbers? I guess you could make them check off place of birth, and if that place of birth is not the United States, you could require them to write down some number of their admission to citizenship? Are there numbers that you could demand? Well, some States require the Social Security number, which is not required, which is not provided for in the statute. But it's not prohibited. And the States were held, in the cases that were brought under that, the States were held that they could add it because it's not prohibited. The State of Louisiana, inconsistently on the part of the AAC, the State of Louisiana has a requirement that was approved by the AAC and is in the form that says if the applicant has neither a Louisiana driver's license, a Louisiana special identification card, or a Social Security number, the applicant shall attach one of the following items to his application, a copy of a current invalid photo identification, a copy of a current utility bill, bank statement, government paycheck, or other government document. Yes, that's the kind of thing you should have had and that your predecessor should have asked for, to be included in the Federal form. Your Honor, the Federal form is not exclusive. But, General, doesn't the statute make the EAC the decision-maker with respect to what can be added to the Federal form? The Federal form, you're exactly right, sets a floor. But if you look at section 7, what section 7 does is to say the EAC gets to decide the minimum necessary, and it consults with the States, and the States can come to it and tell it what it needs, and the EAC can take action. But the EAC is driving the bus, according to section 7 of the statute. Yes, Your Honor. The EAC is driving the bus as to the form, but the States are driving the bus as to what is necessary to determine the eligibility. Well, I don't think they're driving the bus as to the form. They can't drive it into a ditch. They're subject to arbitrary and capricious limitations, just as any other agency is. And to allow Louisiana to include what they've allowed Louisiana to include, and to say that the only proof of citizenship — there is a provision in the statute which says, consistent with determining the States being able to determine the qualifications. Isn't there a provision which makes it clear that the Federal form has to make allowance for the States determining the qualifications? That's correct, Your Honor. And the — but the duty of the States, Your Honor, to determine whether or not a voter is eligible, that is a duty that rests with the State, not with the EAC. That's true, but the form has to enable the State to do that. And it seems to me you were quite able to argue that in refusing to allow you to include in the Federal form in Arizona some indication of proof of citizenship requiring nothing else except, oh, I'm a citizen, check off, I am a citizen, right? So it's under oath, I mean, big deal. If you're willing to violate the voting laws, I suppose you're willing to violate the perjury laws. That's exactly right, Your Honor. So I think you should have challenged the Commission's refusal to place that evidence in the Federal form. Your Honor, the Federal form is a tool that we have to use to determine the eligibility of the voter, but the ultimate responsibility under Section 6A1 of this very Act is with the States to determine the eligibility of the voter. My friends on the other side are admitting that the — that we're not stuck with the four corners of the form, because we've pointed out that would result in a ridiculous conclusion that we could have documentary proof that the person is not eligible. So if we're not bound by the four corners of the form, as in the ordinary use of the term, accept and use, we accept and use the form for a specific purpose, but it is not sufficient to satisfy that purpose. All parties agree to that. The only question is, is there a distinction, which we do not find in the statute, between using external evidence that we already have and asking someone to write down the number on his driver's license, which he is the one that has the most information. It's the logical way to do it. In fact, there is no Federal register of American citizens. Kennedy, I'm a little bit confused. Kennedy, I take it that the counsel on the other side will disagree with that, and they say, well, this is the line to be drawn. The postcard is presumptive evidence of registration and of qualification. And if you have evidence to the contrary, then it's different. But otherwise, the whole utility of the single form is gone. Your Honor, there is nothing in the statute to draw a distinction between our having other extrinsic evidence, which they agree we can use, outside of the form, and our asking people to say, write down. Kennedy, other than the statutory words that authorize the use of the form. Yes, but they don't make the form exclusive. Congress could have said the form is exclusive and you can't ask for anything else. They didn't do that. And they had shown, when they dealt with authentication, that they knew how to prohibit something if they wanted to prohibit it. They chose not to prohibit this exclusively. And so, therefore, it rests with the State. Sotomayor, some of us have due belief in legislative history. Some of my colleagues don't. Yes, Your Honor. All right. But at least one of them. Did he point to himself? One of the concurring judges below said that he found the statute ambiguous, that with the legislative history, there just could be no conclusion. But that Congress rejected your reading. Legislative history is very clear that this issue of what States could add to the form was raised, and permission to do so was proposed explicitly and rejected. How do you, assuming that I believe in legislative history, don't argue to me that I shouldn't, okay? Yes, Your Honor. How do you get around that? Your Honor, if the legislative history were consistent, I would say that was an argument that could be made. But the legislative history here is extremely self-contradictory, and one cannot conclude from any part of that legislative history what was the intent of the majority of the Congress. The House committee, which dealt with the very act that we have, said only the elected officials designated and authorized under State law are charged with the responsibility to enroll eligible voters on the list of voters. The NVRA should not be interpreted in any way to supplant that authority. The committee is particularly interested in ensuring that election officials continue to make determinations as to applicants' eligibility, such as citizenship, as they are made under current law and practice. And the FEC, which is the predecessor to the EAC, relying on that House committee report, said that an application received by a local voter registration official is only an application and be subject to whatever verification procedures are currently applied to all applications. In addition, Your Honor, the sponsor of the bill. Scalia, if I believed in legislative history, I would find that very persuasive. Thank you, Your Honor. Can I ask a different? Can I ask a different? Can I just add one quick point, and that is that the sponsor of the bill was opposed to that amendment in conference committee, saying it wasn't necessary that the State's could already verify applicants under the existing law as it was written before that amendment. There probably is a perfectly good answer to this, but I notice that in this Federal law in 7b, it says what the registration form shall contain. Yes. Now, there are four subsections. Yes, Your Honor. And only one of those refers to a particular thing, and that is identifying information. It shall include statement including citizenship, saying that contains an attestation, the applicant meets that requirement. Yes, Your Honor. And under perjury. Yes. It says that. Then I look at the Arizona law, and it says in Arizona you have to include like an immigration, you know, a passport, a birth certificate, and then it has a couple of other things that show you're a citizen, correct? Yes. Those are very unusual. Normally, you just write down the number from your driver's license. Yes, okay. That's not my question. I'm saying given these five or six specific things that show you're a citizen. Yes, Your Honor. What use does Arizona make of that attestation under perjury? Well, there have been actually there have been prosecutions for perjury, Your Honor, but it's not at all a verification of the eligibility of the citizen, because I didn't say it was, I just want to know, since you have right in front of you a birth certificate or the equivalent, what use are you making of the Federal provision that's there in the form, I am a citizen? What use are you making of that? Well, Your Honor, we are making use of it, and I just mentioned it. Well, I know, I'm sure you are. And then my question is how? By prosecuting. There have been ten prosecutions in one year alone of people who swore it falsely. Out of the hundreds that were caught swearing falsely, ten, in fact, were prosecuted. But that is not a sufficient use or that is not a sufficient measure of determining eligibility, because literally hundreds have been caught swearing jury commissioner forms, swearing they are not citizens after they had already registered to vote. Other people were caught in their applications to citizenship when they checked and found that they had previously registered to vote and voted. So we are making use of it, but it is not a functional way to determine eligibility. And in 7A1, Congress said that both the Federal form and the State form, as incorporated under Section 4, may ask for such additional information, only such additional information as is necessary to determine the eligibility of the voter. That shows that Congress did not intend to prohibit us from getting additional information as is necessary to determine the eligibility of the voter. Kagan. Kagan. Could I take you back to this distinction that you are making? You said you can't append an additional form, you can't use an additional form, but you can require additional information. Yes, Your Honor. So how do you do it? What's the difference between requiring additional information and requiring an additional form? Isn't when you say you need information A, B, C, D, E, that's just a form, isn't it? No, Your Honor, it's not a form. It's an instruction to write down on the Federal form a number, and there's an item 6 on the Federal form has a block where you write down the number, and if you don't have either number, you can write down a driver's license number, you can write down an Indian tribal identification number. If you don't have any of those numbers, then you can send in one of these additional documents. But that is not an additional form. The reason, the distinction I draw between the incorporating another form or the State form and asking for additional information is the purposes and objectives of the Act. The Act indicates that the State form is an alternative to the Federal form but cannot take its place. So I'm saying it would not be consistent with the purpose and objectives of the Act to touch that. It's a form, but it is consistent. What is the – what would be the purpose of requiring a Federal form if you could just say, and in addition to that, you have to give 10 more items of information? I mean, then the Federal form just becomes another hoop to jump through. No, Your Honor, I don't think that's correct. First of all, for two reasons. First of all, the Federal form does provide minimums. You must answer the questions set forth in the Federal form. But secondly, to the extent we add things to the Federal form, those things must be consistent with the purposes and objectives of the Act. And I justify my assertion that Prop 200 is consistent with the purposes and objectives of the Act by relying on the findings of the trial court that relate exactly to that question, finding that it is a minimal burden overcome by a major interest that the State has in protecting the integrity of the system, where the trial judge found a lot of evidence to show that there was voter fraud going on, although not the fault of the individuals, the fault of the organizations that often fool people into signing the form when they don't intend to, or they don't intend to break the law. But as against that, that the burdens are minimal. And the trial court, the district court, had a lot of findings justifying the statement that the burdens are minimal, including the fact, for example, that if all the rejected had been accepted, the increase in Hispanic registration would have only been .1 percent, which is statistically insignificant, including the fact that out of a population of $6 million, the plaintiffs, who have all the resources one can imagine if you look at the list of plaintiffs, could only find one person out of 6 million people that could not satisfy the requirements of the Act, and a lot of other findings by the trial court. And this Court instructed the Ninth Circuit to give deference to the factual findings of the trial court in the Purcell case, and the Ninth Circuit ignored that. And what I'm saying is if you look at the factual findings of the trial court, our position is consistent with the purpose and objectives of the Act. Sotomayor, I'd like to ask you a question. Sotomayor, I'm still having a problem. Both the Federal law and the State law require an individual to be a citizen. That's the basic qualification. Both agree that that's essential. Yes, Your Honor. How do you fit in the question of what documents you use to prove that with establishing the qualification? Meaning citizenship, you either have it or you don't. That's why the Federal form says are you or aren't you. Yes. So there's that qualification has been set by Arizona and the Federal system. The qualification has. But our objection to the Ninth Circuit decision preempting Proposition 200 is that it leaves us unable to enforce our qualification requirement, which under the Constitution clearly is a State function. Counsel, you have proof. There are people that you have rejected even without these forms. It's extremely inadequate, Your Honor. It's essentially an honor system. It does not do the job. Well, that's what the Federal system decided was an honor. That's what they decided as a minimum in the Federal form. But they did not say that we could not ask for additional information. Congress could have said that, just as they said we can't ask for a notarization. They chose not to say that. Well, you admit that it doesn't let you add things. You have to accept and use that form. We have to accept and use the form, and we can't change the form. But we can ask for additional evidence to perform our function of determining that citizenship. I go back to Justice Kagan. If you don't have a driver's license to put a number down, this list of things says you have to append to the form other items, a copy of your birth certificate, a copy of your naturalization certificate. Why isn't that just creating another form? Your Honor, incidentally, there have been references to a postcard. The EAC itself says put the form in an envelope. And just as you put the form in an envelope, you can put a copy of your birth certificate in an envelope. But I would point out under Crawford v. Marion County, the holding in this case, if there's a minimal burden on the great majority of people and a somewhat higher burden on a few people, that does not negate the interest of the State and the integrity of the system. May I reserve time for rebuttal, Your Honor? Yes, you may. Thank you. Ms. Millett. Mr. Chief Justice, and may it please the Court. Arizona simply disagrees with the balance that Congress drew. And when it comes to registration, Justice Kennedy and Justice Kagan, you're both correct. The whole point of the federal form is that Congress had to draw a different balance. It confronted a situation in which 40% of eligible voters were not registered. Because state procedures and burdens were standing as an obstacle, a barrier into the direct line of accountability between individual citizens and their federal government. And in closing, your driver's license number is that immense barrier, right? That's what's keeping 40% of eligible voters away? First of all, with respect to the driver's license, it's only driver's license issued after 1996, October 1996, and those that were not, that someone did not obtain when they became naturalized. So you have to be about 33 years of age. Anyone older than that, their driver's license isn't going to work. And in fact, Mr. Gonzales in this case used his driver's license number and got bounced. I still think that's a relatively few number. And if you don't have the driver's license, then you can use your naturalization certificate. You can. Mr. Gonzales did that as well. And the naturalization certificate got bounced because a naturalization certificate when put into the computer does not produce records. It is a mistake in Arizona's Proposition 200. Neither one of those works. You can say that about any certification procedure, that now and then there will be a mistake. I mean, the fact that there's one person where the computer spit out the wrong number or something, that is the basis for rejecting the entire system that Arizona proposes? Joint Appendix, page 263, the district court found that 31,550 people were rejected from voting because of Proposition 200. On that same page, he finds that 11,000 of them subsequently registered. But they had to do the double gauntlet that Congress was trying to eliminate. The other 20,000 swore under oath that they were citizens, and Mr. Horn before the Ninth Circuit said that they were citizens of the United States. Alito, the statute says that Arizona must accept and use the Federal form. What does that mean? Let me give you two possible definitions. One, the person must be registered if the Federal form is properly completed and submitted. Two, the State may not make any further inquiry of the person who submits the form. Maybe you have other definitions. But what is the — what do you interpret accept and use to mean? We interpret accept and use, it's mainly the latter, your second one, and that is that it is a limitation on what can be asked of the individual. And that's not just from the Section 4 language where accept and use comes from, but what's critical here is Section GG7, which is on 26H of the Petition Appendix here. And that's where they say on this form, the form may require only — may require only from the applicant — I'm adding that in — such identifying information, essentially as the Commission determines as necessary to allow the State to make its decision. Now, this is not just a ticket into the State's own registration process where they can go, thank you very much for throwing it in the garbage can, now do what we would like you to do. It is a registration form, and when filled out completely and submitted under oath, it has the same legal effects as a registration form. Alito, a person rides up to a place to register on a bicycle and gets out and hands in the Federal form, this boy looks like he's 13 years old, he's wearing — he's carrying schoolbooks, he's wearing a middle school T-shirt, but he's filled out the Federal form. Are they required to register him, or can they ask him, could you show me some proof of age, like you would have to if he tried to buy alcohol or cigarettes? They may not require anything else from the applicant, but they can certainly apply their own evidence that they obtain, whether it's from their own eyeballs or whether it is through records or databases that they run these through, which is the more common one, and make a decision. Now, a decision — the decision isn't simply we would like more from you. That's not an appropriate decision. That's not an appropriate constitution. Breyer's point is — he keeps making the point, your colleague, and he says, no, that isn't what it says. What the statute says is it may require only such identifying information as is necessary to assess eligibility. In other words, it's telling the people who write the form what they can put on it, and they can't put other things on it. But it nowhere says that the State can't do other things. Now, that's his point. And when I asked him, well, how are you using, you have to be able to use — oh, he says we use it. We use the citizen part and these things on the form to prosecute people for perjury. So we're doing what it says. We're using it. And it doesn't say we can't add a few other things. Okay. Now, that's his argument. Now, your answer, which would be very helpful to me, is? My answer is that when you look at 26H, it's talking about the form. And first, we know that the commission is the one that decides what is necessary on this form, a decision that wasn't challenged. Is that inclusive or can that be challenged? It can certainly be challenged under the Administrative Procedure Act, but was not in this case. But it says what is necessary on the form. Now, when you give a form, when you say what's necessary on a form, you're talking about from the applicant. So this defines what is necessary from the applicant, what can be requested or demanded from the applicant on the form. Exactly, on the form. And that is the necessary information to let them apply their own tools and make the decisions that the States make. But his problem is, how do you get to that conclusion?  It doesn't say that. It says what the commission can put on the form. It doesn't say anything about whether some other agency, such as a State or, you know, a sovereign, can add something. Now, that's his problem. Now, I would like to hear very succinctly, the reason he is wrong about that is? The commission, let me just be, if we turn to 26H, the very top one. 26H. 26H, where it has a number 1, let's insert the commission before I get to the word may. And that's all you need to do. We know from the prior page the commission is the one doing this. The commission may require only from the applicant. Yes. That's all the commission is allowed to require from the applicant. Correct. Exactly. And then the burden shifts to the State to do it. If, Justice Breyer, if, the question is, they may require that, and then the State can require anything else it wants, it is an utterly pointless form. And what we know from 6H. Excuse me. They may require it. It doesn't say they must require it. So it leaves it open to the commission, does it not, to decline to require some material that is necessary to enable the appropriate State election official to assess eligibility. Isn't that what the language means? I don't think that's a fair reading of what Congress would have assigned to them. But even if it were, Justice Scalia, that comes to be challenged through the Administrative Procedure Act. If one thought that may be. No, no, no, no, we're talking about the, right now we're talking about the consequences of that language, not, and the consequence of the may is may. It does not even require the commission to include within the form everything that's necessary. For the State to determine eligibility. Now, why would Congress ever create such a system where the commission need not require what's necessary for eligibility, and nonetheless, the State cannot, cannot require anything further than what the commission says. The relevant phraseology is may require only. And that is not your normal permissive language. It is actually Congress, it is a language of limitation when used that way. You may require only does not mean that you may, you may, that you may run freely and do what you want, and they have, and it's necessary for the job. It says what you only may require. It doesn't say what you only shall require. But you may require that is necessary to enable. So the language here, I think any fair reading, and we don't strain language in this context, a natural reading is that they may require only the information from the applicant that's necessary essentially to shift the burden. Breyer. No, no, what you're going, where you're going is this, as I heard you before. It is true that there is no specific language saying that the State can't do this, can't add things. But it does make a huge point of proving citizenship in a particular way on the form. What would the point of that be if the State could add things? So we must look back to the purpose, not necessarily exclusively the language, of deciding what that particular provision be, and particularly one, as you quote, adding to, what could it have been? And there the legislative history, in my view, is helpful, because it makes clear, for example, in at least one place, that Congress did think they shouldn't add a provision that allows the State to do just what it's doing here, because that wouldn't be consistent with the purpose of the Act. So I'm putting words in your mouth, but don't accept them because I put them there. I would just like to add to them, Justice Breyer, two points, and that is, with respect to citizenship in particular, not only does the statute, the NVRA flag it, but the Help America Vote Act in 2002, so even if you don't want to go just with the legislative history, Justice Scalia, in 2002, Congress revisited the citizenship requirement for the Federal form, and it added a box that you have to check that you're a citizen. So Congress revisited this issue after the statute had been in effect for nine years. Ms. Millett, I want to give up the proof. Mr. Millett, is there — is there — I take it under your theory what the EAC allowed Louisiana to do was wrong. It's unclear. It's a little different in that context in two ways. First of all, the Commission made the decision, so they have that. Yes, no, I know. I'm assuming that, and I'm saying they were wrong. I'm sorry. And then the second thing is the information that's required there is information for the most part that is — that the Help America Vote Act allows States to require of individuals. Now, in the Help America Vote Act, it's either do it at the polls or do it in the registration. Maybe the Commission thought it could forward it, but at least there you have two profound differences, and that is it's at least information that a separate statute has said States can require from individuals. And those are on form. What are they? That is the question. What are the additional — the question here is, is proof of citizenship an additional thing the State can ask? Now you're telling us that there are some additional things. No, it's not proof of citizenship. What it is is an identification requirement that can be applied at the polls or, the Help America Vote Act says, at the time of registration. Can you explain — it's puzzling that you have all these State-specific — pages of State-specific requirements. What State-specific requirements are permitted and what State-specific requirements are not permitted? You're putting the citizenship on the not permitted side of the line. What is permitted and what is not permitted, and what's the difference in the two categories? First of all, the State requirement of citizenship, it's permitted in the sense that Congress requires in three different ways that citizenship be affirmed. It's simply a disagreement about proof. So it's not as though citizenship is left off this form. It's simply a question of how it's proved. But the Help America — just to get right to your question, there's two aspects to the Help America Vote Act that change this form a little bit. When you go through those instructions, what you will see, here's what those State-specific instructions are. They are the requirement that you put in an ID number that is required by the Help America Vote Act. Required. So clearly, that is to be on the form because another statute requires it. And then you put on — it says to put on party identification for the States that have it. Some States have race identified. And then it — this instruction tells you about the different filing deadlines that you have. Scalia. Is all that stuff required by the Vote America Act? No, no. All that stuff? No. Just the first thing you mentioned. Just the identification. And the rest is what? Well, there's two. Those are things that are in the State. So when you look at those State-specific instructions, they're not add-ons. They're simply — they're not adding attachments to people that you know. I mean, suppose it were true that the EAC has been inconsistent in this respect. That would be a different kind of lawsuit. That would be a very different lawsuit that was never brought in this case. And this just — the Louisiana thing just happened in Herman, Louisiana. No. We've had a great deal of reliance on what the EAC has done. And I'm saying if it's not doing a very good job, I'd be — I'd question whether or not the fact that the EAC is going to implement it is sufficient assurance that the Act reads the way you say it does. The Act, I think, by its own plain language and by its normal — it can't have no — there's only two ways to look at this statute. It either created a form that is simply to be the servant of every State, and they can pile on to it anything else they want. And that is utterly irreconcilable with Congress's findings and the entire purpose of this statute. Or this is Congress's registration mechanism that it chose, exercising its power. Scalia. Not anything else that they want, not anything else that they want, but what is, in the words of the statute, necessary to enable the appropriate State election official to assess the eligibility of the applicant? It's clear that the statute intends the States to be able to do that. And you say, well, the — you know, the commission has — has required its — its own proof, and the State wants a different kind of proof. The proof the commission requires is simply the statement, I'm a citizen. This is proof? It's not proof at all. Under oath is not proof at all. It's just a statement. Statements under oath in a criminal case are proof beyond a reasonable doubt by which we execute. What do you make of the fact that — It's a very serious oath. I'm sorry. I didn't mean to interrupt your sentence. What do you make of the fact that States can create their own forms? Now, Arizona has its own form, right? And I don't believe you argue that its form is illegal. Maybe you think it is, and you'll explain that. But what — how — and Arizona could put on its own form the — a demand for the information that it — it wants to apply to people who submit the Federal form. This seems like a very strange system. So if somebody happens to fill out the Arizona form, their application may be rejected. Whereas, if they had filled out the Federal form, it would be accepted. How can that be? Well, there's two responses. One, there — it's an open question whether the State form, for purposes of Federal elections, can add new requirements. But we haven't challenged it. We haven't challenged it here, and I think it's a difficult statutory question. What statutory provision would you challenge that under? There's a provision of the statute. The numbers are complicated, and I don't have it on the tip of my tongue that says what the State form must do, and I didn't see anything in that that would — that would preclude their requiring this additional proof. I think — I think it's actually a very complicated question. And so to be clear, there's statutory language I think going both ways on this question. There is in 4A.2, which says the State form has to meet the criteria of 7B. But then — and then there is in 5A.6, which says if you're going to be handing it out at your public office, it's the public agencies that have to provide the form. It has to be equivalent. But then in Section 2 — I'm sorry to throw all these numbers, but I'm just trying to show you how it's complicated. In Section 2, the very background for the Federal form is that it's in — it's in addition to whatever the States are already doing. It's even a complicated question. Alito, let's assume for the sake of argument that Arizona could do this on its own form. You haven't argued that their form is illegal. Correct. This seems to me like a crazy system. This is like the, you know, the IRS creating two different tax returns with different — with different tax rates and different tax tables. And how much you pay would depend on which particular form you happen to pick up and submit. No, not in this sense. First of all, it would be very respectful of the States and Congress drawing a balance here if it did that. But Congress has made clear that there's this essentially safe harbor role for the Federal form. And that — and they can't hide it away. It has to be available for the driver's license, the motor voter process. It has to be handed out at the relevant public agencies. And the mail form is available to be handed out or online for people to find. And so, yes, could it be different? Now, it's an open question whether that's what Congress wanted for Federal elections or not, or whether it was just one of those. Roberts. Roberts. You'd have different voter roles then, right? No. No? Oh, I'm sorry. Go ahead. I would have thought since you allow — contemplate a State form that has different requirements than the Federal form, you would then end up with two different voter roles. Some people that registered under the State form, some people that registered under the Federal form. As of now, Arizona is doing it as a unitary system, because anyone who fills out the State form necessarily satisfies the requirement of the Federal form. No, but it doesn't work the other way. It doesn't work the other way. You can satisfy the Federal form, so you're on the Federal list, but not satisfy the State form, so you're not on the State list. It doesn't work the other way, at least for State elections. For Federal — for Federal elections, it has to be the same. And so for Federal elections, there's a single role. It's up to States to decide how they want to deal with the State form. At the time Congress enacted this statute, about half the States in 1993, including Arizona, had a postcard form where you just attested to citizenship under oath. The statute — The court of appeals said that there's a different preemption test under — for this law, under this constitutional provision, than there is under the Supremacy Clause. It seems to me that that ignores the proposition that the State has a very strong and vital interest in the integrity of its elections, even when those — perhaps especially when those are elections of Federal officials. And it seems to me the Ninth Circuit's new test did not give sufficient weight to that interest. Well, first of all, the Ninth Circuit's test came out of this Court's language in Siebold. It had both conflict language and harmonization, both of which appear in this Court's decision in Siebold. But to get directly to your question of whether there should be a different test, I don't think it matters on the outcome in this case because the preemption is in those 31,550 people who couldn't register. But I think the Elections Clause is going to be very different in this sense, in two critical senses, and that is that the Elections Clause involves an authority in the States that is conferred by the Constitution itself. May I finish? Please. It has no reserve power that's being protected there. And by the very nature of the Election Clause is that Congress only acts when it means to displace or change what the States are doing. And so the necessity of having a presumption makes no sense in this context, particularly when you're talking, again, about a Federal form for Federal elections of Federal officials by Federal voters who need a direct line of accountability. Thank you, counsel. Thank you. Mr. Srinivasan. Thank you, Mr. Chief Justice, and may it please the Court. The National Voter Registration Act aims to streamline the process of registration for applicants, and the provisions that provide for the establishment of a Federal form embody that objective. And I'd like to point to three features of the relevant statutory language that I think support our reading. And the particular critical provision is at page 22A of the appendix to the government's brief. And I'm sorry, I know that the provisions are located in a number of areas, but the gray brief at page 22A has a critical provision in our view, which is one that Ms. Millett was pointing to, and that's GG-7B1. Now, what this provision embodies is this understanding, that the EAC is the one who determines what the content of the Federal form is, not the States, but the EAC. The States do have a role in this scheme, and I think it's important to understand what that role is. The States have a consultative role at the front end, and this is back at page 21A. I'm sorry for skipping back, but at page 21A at the bottom of the page, the EAC is to develop a form in consultation with the chief election officers of the States. Scalia, the problem that I have with that is that the provision you're alluding to says that, not that the State shall, not that the commission shall require the information necessary to enable the appropriate State election official to assess eligibility, but it simply says that it may require only that information. Now, is it conceivable that Congress intended that the commission may not require some information that is necessary to enable the appropriate State election official to assess eligibility, but that the State may not require it either? Is that a conceivable disposition of Congress? I don't think it is, Justice Scalia, but I think the problem with that is in the premise. I grant you that the statute says may require, but it says may require only. And I think the only fair way to read this provision is that the commission is to require the information that's necessary, but it may require only. Scalia, I think may require only means shall require only. Is that your submission? May require only means shall require only. It may require only, in effect, means shall require information that's necessary, but may only require that information. I think the statute would make very little sense if the EAC discharged a statutory responsibility by having a Federal form that required nothing other than the name. That wouldn't be within anybody's conceivable conception of a rational objective of Congress to enable the EAC to satisfy that by doing that. Scalia, it would not be a problem if the State could require it. It would not be a problem. When the commission fails to do what's — what enables the State to assess qualifications, the State will do it. No problema. But I think the whole point of this, Justice Scalia, and this is where I started with all due respect, is to come forward with a Federal form that streamlines the process of registration for applicants. And if the regime that resulted were one in which the Federal form served very little purpose other than to set a floor, but then each of the 50 States could superimpose whatever additional requirements they wanted to, I think that would largely defeat the entire purpose of the Federal form. That's the grand purpose. To go back to your particular — I see that as your grand purpose. That's the grand purpose argument. And then there's the subsidiary purpose argument, which you started to make, which I wanted to hear, which has to do with B. It says, May require only such identifying information. So I thought, well, they could require less, less than what's necessary. They could. It says you can't require more. Could require less. But suppose they put a statement in and they say in the — in respect to this qualification, nothing to do with citizenship, this is what is necessary. No more, but we've done everything that is necessary. Then could a State come along and say, we think more is necessary? I don't think so, Justice Breyer. And it's the word necessary that you thought that that would be dependent upon. Coupled with the statutory objective, because what this provision says is that the EAC, in consultation with the States, is supposed to create a form that imposes the following burden on individuals. On individuals. That's the key. Breyer. Now, I'm just not quite — the last step of what I wanted you to think of was this. Sure. It does say may require only. Correct. That which is necessary. So if they said, and this is what is necessary, fine. Pretty tough for the State to say, I'm going to add some things. But the very next subsection does use the word shall include. So I wonder, and that has to do with citizenship. So I wonder if that is a statement by Congress that in respect to citizenship, that is what is necessary. I do think that that's what Congress contemplated was necessary, but it's not to the exclusion of this, which is that if a State comes forward to the EAC, which is the body that's charged with responsibility for defining the context of the Federal form, and says, we think something more is necessary, take a look at what we want to submit to you, and you should amend the Federal form, or you should at least amend the specific portion of the Federal form to include this requirement in it, the EAC could make that determination. Congress takes that responsibility to the EAC. Ginsburg. I think General Horne told us that the State did ask the commission, but the commission had only two members that the commission didn't act on, only the legal director. So how could they get court review of an agency decision that was never made? No, Justice Ginsburg, to be clear, and I don't think General Horne will disagree with this, the executive director initially responded to the request by rejecting it, but it did go to the full commission, and at that point there was a fully constituted commission. The commission divided by a vote of 2 to 2, and so in that sense the commission took no action, but a 2 to 2 vote qualifies as a rejection. And that is something that potentially could have been the subject of judicial review. Now, I'm obviously not going to give away any Federal defenses, but. Scalia. And since you believe that may require only means shall require only, in judicial review the determination before the court would be whether indeed this information is necessary to enable the State to assess the qualifications, right? And the district court here certainly thought that was necessary. So you're going to be in bad shape, the government's going to be. The next time somebody does challenge the commission determination in court under the Administrative Procedure Act. I mean, obviously I'd respectfully disagree with that. I think we'll be in perfectly good shape. And I think part of the reason is that this requiring a statement under penalty of perjury is the traditional way in which States enforce their qualifications. The legislative history shows that Congress understood that that was the traditional way. What the State seeks to do here is to do something over and above the traditional way to enforce qualifications. As Louisiana has done. Well, Louisiana, it's not citizenship specific, Your Honor, as Ms. Millett was pointing out. But it's certainly things that were not required on the Federal form. That's correct. And that was submitted to the EAC and the EAC approved of it. And I think that's the critical distinction here. I would like to see. How is that consistent with the statutory purpose to streamline registration? Because the statute seeks to streamline registration, but it's not an objective to the exclusion of all other objectives. And the EAC is charged with balancing the various competing statutory objectives. And it concluded with respect to Louisiana's submission that that one was okay. Now, I do think that's different, A, because the EAC approved of it, and, B, because the specific forms of identification that are outlined in the Louisiana edition are exactly those forms of identification that Congress already said was okay at either the registration stage or the voting stage. Scalia. You've got to stop saying the commission approved of it. Two to two is not approving. You could say the commission was unable to disapprove of it. Well, I think we're talking about two different things, Justice Scalia. I'm talking about Louisiana. In Arizona, I was trying to answer the Chief Justice's question. In Arizona, it was two to two. Now, I want to point out one other critical feature of the statute. And General Horne alluded to this and said that there's no way to look in the statute and see a distinction between, on one hand, what the individuals can be required to provide, and on the other hand, what the State can then do with the individual's information to cross-check it. And the statute presupposes that the State can conduct its own investigation to cross-check the information that the individuals supply. And maybe the critical provision to see that is at page 19A of the appendix to the government's brief. And that's a provision that deals with a different qualification, felony history. But it operates on this assumption that States can conduct their own investigation, which makes all the sense in the world. This one, this provision, it's in its subsection G at the top of the page, which is 1973GG-6G. What this does is it tells the United States Attorney's offices that when there is a Federal conviction of a felony, the U.S. Attorney's offices are supposed to give written notice of that conviction to the chief State election official. And what's the State chief State election official going to do with that? Well, of course what they're going to do is they're going to take a look at the Federal form. They're going to see what the individual said about their felony history, and they're going to cross-check it against the information that they got from the United States Attorney to make sure that the information on the form is accurate. And so this is the case. Alitoso, may I ask you a question that I asked Ms. Millett? Does the United States think that the Arizona form is illegal? And if it is not, what sense does it make to have a system in which whether or not someone will successfully register depends on the happenstance of the particular form that the person fills out? Here's the sense it would make even if Arizona had the authority to add to the Federal requirements on its own State form. The sense it would make is this, that the Federal form always operates as a floor. It's always there for somebody to use to register, regardless of what the State form might do in addition. And that has — I take Your Honor's assumption — if I could just briefly finish. I understand Your Honor's point that there is a practical question about whether that would ever be practically useful, given that individuals will want to use the State form to register for State, local and Federal elections. But there's also the well-understood practice of organizations that go out to register individuals to vote, and they can use the Federal form, and the Federal form would suffice. Thank you, counsel. General Horne, two minutes. Thank you, Your Honor, and I'll apologize in advance for talking really quickly. The — my friend says in discussing Section 7b1 that it would not be rational to require only the signature, but that's exactly what they did. All they required was the signature, and 7b1 has nothing to do with that. 7b2 requires the signature. So what the EAC chose to do under 7b1 was exactly nothing, zero, which emphasizes the point that this is a responsibility of the States, and that's how they understood it. With respect to the license, having the — we cited ARS Section 28-3173, an Arizona statute in our reply brief, that provides that you must renew every 12 years. So by 2004, the problem that my friend spoke about was completely erased. Everybody had a new license, which would be sufficient for this purpose, 100 percent. They admit that we can reject applications by reference to other — by reference to other documentation, but they try to draw a distinction between that and asking the person to write down the driver's license number. But there is nothing in the statute that justifies that distinction. A reference to criminal history has nothing to do with whether or not there's a distinction with respect to citizenship between looking at other documents and asking the person for their driver's license numbers. In both cases, it's something outside of the form, and they've admitted we can go outside the form. With respect to legislative history, Your Honor, I think the key thing, Mr. Justice Breyer, in your question was it's only in one place. There are a lot of other places that go the other way. So we cannot conclude from that one place what the majority of Congress expected. With respect to HAVA, in HAVA, the Congress had another opportunity to expressly state that the State could not look to external evidence and ask for additional evidence, and they chose not to do that. And so I would say that HAVA is further evidence that Congress was not choosing to prohibit us from asking for additional information to fulfill our function if it's necessary of being sure that the applicant is eligible to vote. With respect to the Seibold case, the Court in Seibold specifically said there will be no preemption unless there is a direct conflict, and only to the extent of that conflict. And in that connection, one last sentence, Your Honor. If there are two plausible interpretations, ordinary principles of federalism say one should not choose the interpretation that results in preemption, and the same thing applies with respect to the canon of constitutional avoidance. Thank you, Your Honor. Counsel, the case is submitted.